CORINNE ANNA FRECHETTE *vs.* THE TRAVELERS INSURANCE COMPANY.

JULY 24, 1944.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

BAKER, J. This is an action of assumpsit. It was heard in the superior court by a justice sitting without a jury. He rendered a decision in favor of the plaintiff for $5685, and the defendant thereafter duly prosecuted its bill of exceptions to this court. The only exception now relied on by the defendant is to the above decision. Certain exceptions taken by it to rulings made during the trial are not briefed or argued and are therefore deemed to have been waived.

The plaintiff alleged that she is the widow of Emile Frechette, who was an employee of The Great Atlantic & Pacific Tea Company, hereinafter referred to as the A. & P. She sues as the holder of and as the beneficiary named in two certificates of life insurance, one originally for $1500, but later automatically increased to $2000, and the other for $3000, both issued to Emile Frechette by the defendant under the terms of a group life insurance policy in effect between it and the A. & P. These certificates were dated December 31, 1925.

The plaintiff, contending that her husband died while employed by the A. & P. and while the above policy and certificates were in force, claims to be entitled to receive from the defendant the sums stated on the said certificates with interest from the date she made demand therefor. The defendant, on the other hand, in addition to pleading the general issue in answer to the plaintiff's declaration, also pleaded the six-year statute of limitations and that due proof of the death of Emile Frechette was not received

by it from the A. & P. The evidence shows that a form entitled "Claimant's Statement-Proofs of Death", was filled out and filed by the plaintiff with the defendant on September 3, 1941, and it was from this date that the trial justice allowed the plaintiff interest. The present case was started by a writ dated November 12, 1941.

The first important question is whether or not plaintiff's husband is dead and if so when his death occurred. The following facts appear from the evidence: On February 3, 1934 Emile Frechette was forty-six years of age. He was happily married, had four children and lived with his family in East Providence in a house which he owned. He was employed by the A. & P. in a responsible position, being assistant superintendent for its stores in and around Fall River, Massachusetts, and he traveled in an automobile furnished by that company. He had worked continuously for the A. & P. in different capacities since 1920, and apparently was a trusted employee of high character who stood well with his employer.

Evidence submitted on behalf of the plaintiff showed that Emile Frechette left his home early on the morning of Saturday, February 3, 1934, a cold, snowy and slushy day, and about 8 a. m. visited an A. & P. store in Fall River, managed by a man named William Cobery, a close personal friend. He testified as follows regarding that incident: "Well, the first time he came in in the morning, he made my store the first stop that morning, and the way he put it, he was in pretty tough shape. He came in. I asked him, I said, 'What is the matter, Emile?' He was very excitable. He says, 'My eyes, my head. My eyes and my head,' he says. He says, 'Between my eyes and my head and the way Mr. Peterson, the superintendent, has been rubbing it into me this week, I feel as though I could go right down to the bottom of the street and jump in the river and end it all.' " This witness also testified that he had seen Frechette very nervous and excitable before, and that he acted in that manner when he was ill and suffering.

The evidence further showed that Frechette returned to the same store about noontime on that day apparently for the purpose of taking an inventory, but his physical condition had not improved and he told Cobery to have the meat manager take the inventory. Cobery then testified that Frechette again returned to the store about 9:30 p. m. and described that visit as follows: "He told me to have the meat manager take inventory that night, and, of course, I told the meat manager to take it; and then he came back later, came back about 9:30—we closed at 10 o'clock at that time—and he came back, came to the back door of the back room. He didn't come in, just opened the door. He says, 'I would like to see you a minute, Bill.' He says, 'Have the meat manager take the inventory and I will be around Monday for the figures.' Then he said to me—he put out his hand, he said, 'Good by.' I thought that was quite strange. I said, 'Why do you say that?' He said, 'Good by,' and that is the last I saw of him."

This was the last time Emile Frechette was seen alive. No member of his family and none of his friends or acquaintances have ever seen him or heard from him or about him since. On Monday, February 5, 1934, his wife notified the East Providence police of his disappearance, and that evening they had several radio stations broadcast information concerning him. The automobile he used was found in a parking lot near the Union Station in Providence, having been there since February 3. According to information given the plaintiff by East Providence police her husband's overcoat was found in the automobile; but, if so, the coat was never turned over to her. The records of the Providence police department apparently contained nothing about the finding of an overcoat in the car.

It also appeared from the evidence that Frechette's health had been poor for a long time. He had an attack of Bright's disease in 1924 which prevented his working for about six months. Since that time he had been on a diet and had had more or less trouble with his digestion. While

living in East Providence he had a very painful attack of gallstones. In addition, his eyes had bothered him for a considerable time and he had consulted doctors without obtaining relief. He also had severe headaches very frequently. However, the plaintiff apparently noticed nothing unusual about her husband's condition when he left home on the morning of February 3.

Furthermore, she knew little about his finances, since he handled the family money and paid the bills. He was receiving a salary of $70 a week and did not appear to be in financial difficulties of any kind, although there was a mortgage on their house and certain furniture was being paid for on the installment plan. His accounts with the A. & P. were in a satisfactory condition. On May 12, 1941 by a decree of the probate court of East Providence he was declared to be legally dead, on the ground that he had been absent and unheard of for a period of time exceeding seven years, and the plaintiff was appointed administratrix of his estate.

The office manager of the A. & P. testified that Frechette ceased to be an employee of that company and that his insurance was canceled as of Saturday, February 3, 1934, because he did not report for work on Monday, February 5. He was last paid for the week ending February 3. However, another check for $70 was sent to the plaintiff February 7, 1934 but, according to the witness, this payment was not classified as wages but as a gratuity. This witness also testified that the premiums on the group insurance policy were paid monthly in advance and had already been paid on February 3 for the month of February. A portion of this payment consisted of a deduction from the employee's wages, and this included Frechette's wages. The amount of such premium was estimated, and there was an audit semiannually in May and November and an adjustment annually.

For the defendant an investigator, who in 1934 was employed by it, testified that on March 12, 1934, he inter-

viewed Cobery. The following appears from the testimony of this witness: Q. Did he say whether Mr. Frechette had complained of any trouble that had been bothering him? A. Yes, he said that Mr. Frechette had complained of various troubles that were bothering him for the past two years. He had even said some day he would disappear, and that he wanted everyone to forget him, and he wanted to forget everyone and everything, and start in again. Q. Did he say anything about going to California A. Mr. Cobery said Mr. Frechette had even spoken of going to California and getting a small house, and later on bringing his family there, where they could start in new. . . . Q. Did he say whether Mr. Frechette had ever spoken of committing suicide, or what did he say in that regard? A. Mr. Cobery told me that Mr. Frechette spoke many times of going away and disappearing, but never spoke of suicide . . . ." This witness admitted that his written report contained the following statement as information obtained from Cobery: "He (Frechette) put his hands on his head and jumped in the air, and said he was going crazy. At 12:30 he drove up and called to Cobery to come to the car. He told Cobery he was thoroughly discouraged."

Cobery testified that he did not know the investigator, but later denied making the above statements to him concerning Frechette's disappearance and going to California, and also testified that he (Cobery) did not remember making certain other statements.

For the plaintiff to recover in this case she must first show by a fair preponderance of the evidence that her husband died while he was still in the employ of the A. & P. and while his insurance was in force. She contends that she has done this, whereas the defendant maintains that the evidence does not establish these necessary facts.

This court has recognized that the unexplained absence of a person from his home unheard of by his family or friends for a period of seven years raises a presumption of death. This presumption is rebuttable. *In re Truman,* 27

R. I. 209; *Bonanno* v. *Prudential Ins. Co.*, 62 R. I. 78. There is, however, no presumption as to the precise time of death of one presumed to be dead because unheard of after an absence of seven years. If the time of death is important it must be shown by evidence. *Davie* v. *Briggs,* 97 U. S. 628. If the action is on an insurance policy, as here, the beneficiary has the burden of showing that the assured died while the policy was in force. *American National Ins. Co.* v. *Hicks,* 35 S. W. 2d 128 (Texas).

In the absence of circumstances pointing to a contrary conclusion it is generally considered that the presumption of life continues during the seven year period until the expiration thereof. 2 Appleman Ins. Law & Pr., §§741, 742. However, in the following cases an inference from the proven facts to the effect that the insured's death occurred at or about the time of his disappearance and while the policy in question was still in force, was sustained as supporting recoveries under the policies. *Behlmer* v. *Grand Lodge, A. O. U. W.*, 109 Minn. 305; *Schell* v. *Metropolitan Life Ins. Co.,* 3 S. W. 2d 269 (Mo. App.); *Carpenter* v. *Modern Woodman,* 160 Ia. 602, in which case it appeared that the assured's health was bad.

In the instant case the plaintiff contends that there were facts and circumstances shown which pointed to a conclusion that her husband died by taking his life at or about the time of his disappearance. The trial justice so found from the evidence. In his rescript he stated: "I conclude on all the evidence on the probabilities that it is more probable that Frechette came to his death on or about February 3, 1934 and before February 5, 1934, and I so find." In reaching this conclusion he decided, among other things, that the testimony of Cobery, rather than that of the insurance investigator, as to what happened and what was said by Frechette on February 3 was true. He also pointed out that Frechette was fond of his family, had no domestic difficulties, was of good character and not given to irregularities, and stood well with his employer. The trial justice, ac-

cording to his rescript, was of the opinion that Frechette's happy family life, his well-paid position and regular habits showed no motive to leave his family and position, and that nothing in the pattern of his life suggested flight; but that his physical and mental condition on February 3, and his threats to end it all, pointed to his death on or about that date.

In addition the trial justice found that the employment of Frechette was not actually terminated until sometime on or after Monday, February 5, 1934, the next working day after his disappearance, and that the insurance policy in evidence and the certificates issued thereunder were in effect on the date on which the trial justice found that Frechette had died. He also ruled that neither the employer nor the insurer could cut off the rights of the beneficiary by making the actual termination of employment retroactive so as to cause it to take effect as of February 3, 1934.

We have carefully considered the evidence and the inferences and deductions which the trial justice drew therefrom in reaching his conclusion as to the reasonable probabilities of the situation and in arriving at his above findings. After so doing we are of the opinion that he thoroughly reviewed the evidence and we cannot say that such findings were clearly wrong.

The defendant argues that the discovery in a parking place close by the Union Station of the automobile used by Frechette points "definitely" to flight by train or bus rather than to death on February 3. We are unable to give this piece of evidence any such necessary and conclusive meaning. It is, of course, a fact in the chain of circumstances and should be considered and given such weight as the trier of the facts determines it is entitled to. The trial justice did not overlook this evidence but performed his duty in respect thereto. The parking lot in question was merely close to the station but it was not shown that it was operated by the railroad in connection with its busi-

ness or solely for patrons using the railroad. The defendant also argues that if Frechette had drowned himself in waters near-by the city of Providence his body probably would have been later found. This matter, in our judgment, enters the realm of speculation and is so fraught with uncertainty that it should not be made the basis of overruling a finding on the point in issue.

The defendant has pleaded the six year statute of limitations, contending that the action should have been brought within six years of the time it was decided that Frechette died, as the cause of action then accrued. In our opinion, the plea, under the facts and circumstances disclosed by the evidence, is not good and in overruling it the trial justice decided correctly. It is generally held that where insured persons disappear, under circumstances which give rise to a presumption of death after an absence of seven years, actions to recover on life insurance policies issued to them do not accrue until the expiration of seven years from the date of their disappearance, when the legal presumption of death arises. 34 A. L. R. 91 (n.); 61 A. L. R. 1329 (n.).

The defendant also pleaded that it had not received due proof of the death of Frechette. The defendant does not question the sufficiency of the proofs of death as such but raises a question as to whether or not they were duly filed. It argues that if Frechette died prior to February 5, 1934 the filing of proofs of death on September 3, 1941 was not a compliance with a provision of the policy that due proofs of death must be filed, which means a filing within a reasonable time after death.

In this connection the evidence shows that on February 3, 1941 the plaintiff wrote a letter to the defendant calling to its attention that her husband disappeared February 3, 1934; that seven years having elapsed he was legally dead and that the insurance on his life was payable to her as his beneficiary. The letter also asked that a representative of the defendant be sent to call on the plaintiff. Incidentally

it appears from the evidence that soon after the disappearance of Frechette the defendant was notified of that fact and it sent investigators to interview the plaintiff and others. It is also clear that for some time it continued to conduct an investigation of its own into the matter. In response to the plaintiff's letter above referred to, the defendant later sent an adjuster to call on her and in August 1941 he furnished her, through her attorneys, a printed form on which to make proofs of death. She filled out this form and filed it with the defendant September 3, 1941.

In this case, in order to get the benefit of the presumption that her husband was legally dead, the plaintiff was relying on the fact that he had been unheard of for seven years after his disappearance. Under these circumstances this cause of action did not accrue to her until said seven years had passed, and thus proof of her husband's death could not properly be made until that time. In view of this situation and of all the facts appearing in evidence, we are of the opinion that the defendant in this case received due proofs of the death of Emile Frechette according to the provisions of its policy, and that such proofs were filed within a reasonable time after the plaintiff was in a position to properly file them. The overruling of this plea by the trial justice was, therefore, without error.

All of the defendant's exceptions are overruled, and the case is remitted to the superior court for the entry of judgment on the decision.

*Corcoran & Mangan, Francis R. Foley,* for plaintiff.
*Henry M. Boss,* for defendant.